IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.

Case No: 8:18-cr-465-T-24AEP

<u>LARRADA SIERRA ALTEMAR</u>/

**DEFENDANT LARRADA SIERRA ALTEMAR'S
SENTENCING MEMORANDUM**

COMES NOW, the Defendant, LARRADA SIERRA ALTEMAR, by and through his undersigned counsel, and provides this sentencing memorandum in the above-styled matter detailing objections, observations, Bureau of Prison logistical considerations, miscellaneous issues, a Section 3553(a) analysis with a request for mitigation and in support states as follows:

I.   The Defendant Objects to the denial of minor role in the offense.

The Presentence Report gives no adjustment to the Defendant for his role in the offense. (See, PSR, p.6, par.23). The facts and circumstances of the case show that the Defendant should be given a two-level downward minor role adjustment under U.S.S.G. Section 3B1.2(b). Application Note 3(c) directs the court to consider the following factors:

1. The degree to which the defendant understood the scope and structure of the

criminal activity;

2. The degree to which the defendant participated in planning or organizing the criminal activity;

3. The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

4. The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

5. The Degree to which the defendant stood to benefit from the criminal activity.

Application note 3(c) further provides, as an example, that a defendant who does not have a proprietary interest and who is simply being paid to perform certain tasks should be considered for a mitigating role adjustment.

As the Pre-sentencing Report notes, the Defendant was merely a crew member of the go-fast vessel. (see PSR, p.6, par.17) The Defendant's role was limited to assisting as a mariner by doing only whatever he was told to do. The Defendant was told to watch the fuel levels and to change the fuel when necessary and he spent the entire trip of the vessel doing this task. The Defendant knew little of the scope and sophistication nor the range and depth of the conspiracy and did not participate in planning or organizing the criminal activity.  The Defendant had no direct knowledge of the quantity of drugs, the weight of the drugs nor the value of the drugs.

The case agent Daniel S. McDonough has confirmed that based on his review of the case file and contemporaneous notes that the following assessment of roles within the conspiracy is correct: Juan Andres Julio Cardales served as the captain of the vessel, Yovanny Hernandez Severino had the role of load guard and load manager and the Defendant was a crew member who kept up with the fuel.

As captain, Juan Andres Julio Cardales held ultimate responsibility for the go-fast boat including seaworthiness, safe handling and management of all of those aboard the vessel.

Also, in stark contrast to the Defendant's role is that of co-defendant, Yovanny Hernandez Severino, who had the role of load guard and load manager with responsibilities of overseeing the cocaine transfer with additional tasks of protecting and guarding the cocaine shipment. Severino was incorrectly identified as the master of the vessel at the time of the interdiction when he took over the steering from the captain in an attempt to evade the interdiction.

The criminal masterminds of the conspiracy deliberately limited the Defendant's knowledge and participation to protect the on-going drug enterprise from the possibility that he would be apprehended. As a mere functionary in the conspiracy, the Defendant's knowledge of the conspiracy as well as his actions in furtherance of the conspiracy were minor as compared to the roles of the co-defendants and therefore his role should be adjusted downward.

II.  Other Sentencing Considerations: USSG Section 3553(a) Analysis

USSG Section 3553(a) makes it clear that the Court should consider a just punishment, deterrence, protection of the public and rehabilitation in finding a fair sentence.

Larrada Sierra Altemar was born in Riohacha, La Guajira, Colombia and he became a fisherman at age twenty-two. (see PSR p.10, par. 56) . He never had an opportunity to attend school further than the seventh grade because his father had to quit work upon suffering heart problems. (see PSR p. 10, par 54.)

He has five children with Leslie Rose Marie Zuniga with whom he's enjoyed "a perfect" relationship for twenty-three years. His youngest child is only six years old and often asks, "when is daddy coming home?" (see PSR p.9, par. 44) He entered into this unlawful conduct with the hope of providing more for himself and his family, including an older brother, Jose Larrada Sierra, who is unable to speak nor take care of himself. (see PSR p. 8, par. 40) He hopes to someday be reunited with his family and wants to do everything he can to help them and be near them.

He fully understands the significance of what he did. The Defendant is remorseful for his conduct, he regrets his actions and he can be trusted to never break the law again. He also understands that his actions compromised his ability to support his family over the next few years making each of his children's lives much more difficult by deepening their poverty. His family has so little money that he's uncertain how they'll be fed now that he's incarcerated.

Within his community the Defendant is respected, cherished, loved and missed by his family, friends and those who knew him. The Defendant has a viable

vision for his future with the worthy goals of spending more time with his loved ones while finding honest, challenging, rewarding work that will enable him to do more for his family when he is finally released from prison. He does not represent a likely risk of recidivism as he understands fully the terrible consequences and significance of his crime for himself and his loved ones.

Although this crime is serious and deserves punishment, the Defendant is a nonviolent, first-time offender who can best serve his family, his community and the goals of the Federal Sentencing Guidelines by being placed in prison for as short a time as possible.

III. *First Step Act* And The Minimum Mandatory Sentence Application

On December 21, 2018 the *First Step Act* became law. The Defendant pled guilty to Count Two on January 28, 2019 before the magistrate judge. (see PSR p.4, par.5)  On January 29, 2019 this Court accepted the defendant's plea of guilt. (see Doc #55, ECM)

Section 402 of the *First Step Act* authorizes this Honorable Court to impose a sentence below the mandatory minimum. Section 402(b) provides that the new Safety Valve Provision "shall apply only to a conviction entered on or after the date of the enactment of this Act." Here the Defendant pled guilty and the Court accepted the Defendant's change of plea after the Act became law.

The parties agree that the Defendant has met all five criteria for the safety valve reduction under the sentencing guidelines. (see PSR p.6, par.21) Those same five criteria apply for safety valve relief from the statutory mandatory minimum

under 18U.S.C. Section 3553(f). Until the passage of the *First Step Act* Section 3553(f) only applied in this Circuit to cases brought under 21 U.S.C. Sections 841, 844, 846, 960, 963.

Accordingly, the Defendant respectfully requests that he be sentenced below the statutory mandatory minimum pursuant to Section 402 of the *First Step Act*.

IV.   Bureau of Prison Logistical Considerations

Should the Court determine that Federal incarceration is necessary and proper, the Defendant would like to take any available Air Conditioning courses, as well as masonry, carpentry and construction and be given the opportunity to learn English, study music and further his education while learning vocational skills while incarcerated. (see PSR p.10, par.55)

Respectfully Submitted,

ROBERT L. HAMBRICK

13575 58th N., Suite 108
Clearwater, Florida 33760
(727)365-5555

By: /s/*Robert L. Hambrick*
ROBERT L. HAMBRICK
Fla. Bar # 385875

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic-mail delivery to co-defendants' legal representatives, the United State's Attorneys office and to the United States Probation Office in Tampa Florida, this 6th day of May, 2019.

By: /s/*Robert L. Hambrick*
ROBERT L. HAMBRICK